UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:23-cr-00035-JAW |
| | ) | |
| JEFFREY PAUL BARNARD | ) | |

**ORDER DENYING MOTION TO DISMISS**

A defendant charged with possession of a firearm by a prohibited person pursuant to 18 U.S.C. § 922(g)(1) moves the Court to dismiss the indictment on the ground that the statute is unconstitutional as applied to him because it violates his Second Amendment right to bear arms in self-defense. The Court denies the motion in line with First Circuit precedent holding that § 922(g)(1) is constitutional.

## I.    FACTUAL BACKGROUND

On March 6, 2023, Jeffrey Paul Barnard was stopped by the police for allegedly driving with an expired learner's permit. During this stop, officers claim that they found Mr. Barnard knowingly in possession of a firearm. As Mr. Barnard had four prior felony convictions, on May 18, 2023, a federal grand jury charged Mr. Barnard in a one-count indictment as being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Sealed Indictment* (ECF No. 3). On September 15, 2023, Mr. Barnard moved the Court to dismiss the indictment. *Mot. to Dismiss* (ECF No. 48) (*Pl.'s Mot.*). On October 6, 2023, the Government responded in opposition. *Resp. in Opp'n* (ECF No. 58) (*Gov't's Opp'n*). On November 17, 2023, Mr. Barnard replied. *Def.'s Reply* (ECF No. 66).

## II.     THE PARTIES' POSITIONS

### A.     Jeffrey Paul Barnard's Motion to Dismiss

Mr. Barnard's argument is multifaceted, yet singular in focus: he claims that "18 U.S.C. 922(g), as applied to [him], is unconstitutional and in violation of the Second Amendment . . . as it impermissibly restricts [his] right to bear arms to protect himself due to his disability." *Pl.'s Mot.* at 2.

To set the stage, Mr. Barnard cites Supreme Court decisions to argue that the high court recently expanded Second Amendment rights. *Id.* at 2 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022)). Mr. Barnard submits that "*Bruen* is significant [because it] . . . modified the previous legal standard governing Second Amendment cases, creating a new two-step analysis." *Id.* at 4. (citing *Bruen*, 142 S. Ct. at 2129-30). The first step is considering the Second Amendment's plain text: if it "covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30.

Despite conceding that in *Heller* the Supreme Court wrote that "nothing" in the "opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by *felons* and the mentally ill," *see Pl.'s Mot.* at 4 (quoting *Heller*, 554 U.S. at 626-27) (emphasis supplied), Mr. Barnard characterizes this language as "dicta" and merely "an unconstitutional advisory opinion." *See id.*

2

(quoting *United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 U.S. Dist. LEXIS 112397, at *34-44 (S.D. Miss. June 28, 2023)).  Therefore, Mr. Barnard argues, "district courts must apply the framework required by the controlling precedent established in *Bruen* without deference to potentially contradictory advisory opinions constituting nothing more than dicta." *Id.* at 5.

Mr. Barnard applies the *Bruen* two-step framework.  At the first step, Mr. Barnard argues, "the Constitution presumptively protects" his conduct of possessing "a handgun for self-defense purposes outside of his home." *Id.* (citing *Bullock*, 2023 U.S. Dist. LEXIS 112397, at *6, *72).  At the second, Mr. Barnard claims the Government "will not likely be able to" satisfactorily "put forth historical examples justifying its regulation." *Id.* at 6.  Mr. Barnard concedes "the Supreme Court has not decided the issue at hand directly" but points to the historical analysis in then-Judge Barrett's dissent in *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019), which concludes that "neither the convention proposals nor historical practice supports a legislative power to categorically disarm felons because of their status as felons." *Pl.'s Mot.* at 6-7 (citing *Kanter*, 919 F.3d at 458).  Therefore, Mr. Barnard maintains, the "Court should grant [his] motion to dismiss" "because the government cannot meet its burden as required by the *Bruen* analysis." *Id.* at 8.

## B.    The Government's Response

The Government contends that § 922(g)(1) does not violate the Second Amendment as applied to Mr. Barnard. *Gov't's Opp'n* at 3-37.

The Government provides background for its argument by pointing out that "the right secured by the Second Amendment is not unlimited," *Heller*, 554 U.S. at 626, and that "*Heller*'s holding 'did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons.'" *Gov't's Opp'n* at 3 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)).

The Government submits that after *Heller* and following its reasoning, the First Circuit rejected a challenge to § 922(g)(1). *Id.* at 3-4. What's more, the Government adds, "[t]he First Circuit noted that 'all of the circuits to face the issue post *Heller* have rejected blanket challenges to felon in possession laws.' The majority of circuits to address the issue post-*Heller* has concluded that Section 922(g)(1)'s felon-possession prohibition is not subject to as-applied challenges." *Id.* at 4. (quoting *Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011)).

The Government further represents that "'no circuit' has ever 'held [18 U.S.C. § 922(g)(1)] unconstitutional as applied' to an individual convicted of an offense labeled a felony." *Id.* at 5 (alteration in original) (quoting *Medina v. Whitaker*, 913 F.3d 152, 155 (D.C. Cir. 2019)). While the First Circuit "avoided deciding whether an as-applied challenge is possible" it "expressed deep skepticism of as-applied challenges to Section 922(g)(1) in *Torres-Rosario*." *Id.* at 6.

The Government homes in on the Supreme Court's "recognition that the right to bear arms is limited to 'law-abiding, responsible citizens,'" and argues that "since *Heller*, the Supreme Court has twice reaffirmed—first in *McDonald*, then in *Bruen*— that the right to bear arms is limited to law-abiding citizens." *Id.* at 7. Therefore,

the Government contends, "the Supreme Court's decision [in *Bruen*] plainly does not abrogate the above decisions recognizing that felons may be categorically prohibited from possessing firearms." *Id.* at 9. The Government points to "multiple district courts [which] have relied upon pre-*Bruen* precedent in rejecting post-*Bruen* challenges to Section 922(g)(1)." *Id.*

The Government also submits that while *Bruen* disavowed means-end scrutiny, that "aspect of *Bruen*'s holding casts no doubt on the holdings in *Torres-Rosario*" and those of several other circuit courts. *Id.* at 10. Therefore, the Government argues, "this court should conclude that the Second Amendment is not susceptible to Barnard's as-applied challenge," "[c]onsistent with the First Circuit's skepticism and persuasive authority from the majority of circuits that have directly addressed the issue." *Id.* at 11.

The Government's second argument is that even if Mr. Barnard could bring an as-applied challenge, "the text of the Second Amendment and its historical context make plain that Barnard, a convicted felon, cannot mount a successful attack on Section 922(g)(1)." *Id.* This is so, the Government posits, because "[a]s a matter of both text and history, the Second Amendment does not prevent legislatures from prohibiting firearm possession by those who have demonstrated disregard for the rule of law through the commission of felony offenses." *Id.* at 12 (citing *Medina*, 913 F.3d at 157-61). After all, the Government submits, the Second Amendment's "protections extend to 'ordinary, law-abiding, adult citizens,' who are entitled to be 'members of the political community,'" and "individuals[, like Mr. Barnard,] who commit crimes

punishable by more than one year of imprisonment and are subject to disarmament laws on that basis" do not fit that mold.  *Id.* (quoting *Bruen*, 142 S. Ct. at 2314; *Heller*, 554 U.S. at 580).  Consistent with that understanding, the Government continues, "legislatures historically have had wide latitude to exclude felons from the political community as a consequence of their convictions," *id.* at 13, and "[j]ust as Congress and the States have required persons convicted of felonies to forfeit other rights belonging to members of the political community, Section 922(g)(1) accords with the historical meaning of the Second Amendment by imposing a firearms related disability 'as a legitimate consequence of a felony conviction.'"  *Id.* at 14 (quoting *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring in most of the judgment)).

Addressing the text of the Second Amendment and referencing *Heller*, the Government contends that "the Court parsed the text of the Second Amendment and incorporated into its holding the recognition that the plaintiff would be entitled to keep a handgun in his home '[a]ssuming that [he] is not disqualified from the exercise of Second Amendment rights.'  Barnard, by contrast, is a felon and therefore is 'disqualified from the exercise of Second Amendment rights.'"  *Id.* at 16 (internal citation removed) (quoting *Heller*, 554 U.S. at 635).

The Government then argues that "a comprehensive review of historical tradition confirms legislatures' authority to prohibit felons from possessing firearms."  *Id.*  In support of this conclusion, the Government cites developments from the

English legal tradition, the colonial period, the Revolutionary War period, and the Ratification debates. *See id.* at 16-24.

Continuing its analysis of history and tradition, the Government turns to felony punishment laws. The Government submits that penalties for committing a felony have been harsh since the English legal tradition that predated our own. *See id.* at 26-29. For example, "[c]apital punishment and forfeiture of estate were [] commonly authorized punishments in the American colonies (and then the states) up to the time of the founding." *Id.* at 27 (citing *Folajtar v. Attorney General*, 980 F.3d 897, 904-05 (3d Cir. 2020)). In turn, the Government argues, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Id.* at 29 (quoting *Medina*, 913 F.3d at 158).

The Government compares § 922(g)(1) to historical regulations and contends that "Section 922(g)(1) imposes *no* burden on 'a law-abiding citizen's right to armed self-defense' because it only applies to people who have removed themselves from the law-abiding citizenry by committing offenses punishable by more than one year of imprisonment." *Id.* at 30 (emphasis in original) (quoting *Bruen*, 142 S. Ct. at 2133). In any event, the Government continues, "the burden imposed by disarmament on a felon's rights is comparable to historical laws disarming the untrustworthy and less severe than many historical laws punishing felonies, which often include the death penalty and forfeiture of one's estate." *Id.*

The Government concludes its argument on history and tradition by contending that Mr. Barnard's arguments "lack merit." *Id.* at 30-33. Specifically, the Government argues that Mr. Barnard "misunderstands *Bruen*'s historical inquiry [because d]etermining whether a regulation is consistent with the historical tradition of firearms regulation may require use of historical analogies to determine whether the two regulations are 'relevantly similar,'" not a "'historical twin' or 'dead ringer.'" *Id.* at 32 (citation omitted) (quoting *Bruen*, 142 S. Ct. at 2132-33). Instead, the Government argues, "Section 922(g)(1) is 'analogous enough' to the array of English and early American historical precursors discussed above 'to pass constitutional muster.'" *Id.* at 33 (quoting *Bruen*, 142 S. Ct. at 2123).

The Government ends its brief by arguing that *Range* and *Bullock*, the post-*Bruen* cases Mr. Barnard relies on, were "incorrectly decided" and even if they were applicable, they are distinguishable. *Id.* at 33-36.

## C.    Jeffrey Paul Barnard's Reply

Mr. Barnard organizes his reply into two core arguments. First, he asserts that the Government "incorrectly interprets both pre-*Bruen* law and the post-*Bruen* Second Amendment framework." *Def.'s Reply* at 1-4. Second, he disputes that the Government adequately showed "that permanently disarming Mr. Barnard is supported by a historical tradition of analogous laws." *Id.* at 4-12.

Mr. Barnard sets the stage by taking issue with the Government asserting that § 922(g)(1) is not subject to as-applied challenges, "despite the First Circuit not yet having expressly foreclosed the possibility of such challenges." *Id.* at 1.

8

Mr. Barnard turns to his first substantive argument, asserting that "[i]t is clear given the plain language and context of the Second Amendment within the United States Constitution, that Felons had not previously been disarmed because they were not considered part of 'the people,' but because prior to *Bruen*, the framework for Second Amendment challenges allowed for the application of means-end scrutiny which the Government used to justify disarming Felons." *Id.* at 1-2. Post-*Bruen*, Mr. Barnard argues, "the burden [is] on the government to 'affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* at 2 (quoting *Bruen,* 142 S. Ct. at 2127).

Mr. Barnard disagrees with the Government's assertion that he "fails at the first step of the *Bruen* framework" because he is a felon and therefore "not considered a person to which the Second Amendment applies." *Id.* Instead, Mr. Barnard argues, the first step of the *Bruen* analysis "requires courts to look at the conduct 'being regulated, not the status of the person performing the conduct.'" *Id.* (quoting *Bullock*, 2023 U.S. Dist. LEXIS 112397, at *47). Ultimately, Mr. Barnard claims his status as a felon has "no bearing on *Bruen* step-one as the plain text of the Second Amendment does not provide any support for this position." *Id.* at 2-3. Mr. Barnard points to the "the people" used in the First and Fourth Amendments and the preamble to the Constitution, to support the proposition that Mr. Barnard remains one of "the people" for other constitutional purposes, thereby undermining the Government's assertion that he is not part of "the people" for purposes of the Second Amendment. *Id.* at 3.

Mr. Barnard addresses his second substantive argument, in which he disputes the Government met its burden of showing that disarming him because of his status as a felon is supported by a historical tradition of analogous laws. *Id.* at 4-12. Specifically, Mr. Barnard argues "these references fall short of what is required by the Supreme Court," *id.* at 5, and "should not be considered 'relevantly similar' enough to Section 922(g)(1) to satisfy *Bruen* step-two." *Id.* at 6. Mr. Barnard submits that "[i]n none of [its] examples does the government explain how the groups of people were disarmed (the mechanics of disarmament or process followed to disarm individuals), or why they were disarmed (the purpose of the historical regulations)." *Id.* at 4. Beyond this flaw, Mr. Barnard argues that "the analogy is too broad. The purpose of this historical disarming of groups was seemingly not for the protection of the public [like § 922(g)(1)], but for the purposes of preventing opposition to those in power." *Id.* at 6. Moreover, Mr. Barnard claims, "it is also of note that many of these regulations could be cured by taking an oath or through an act of a similar nature, whereas Mr. Barnard's disarming under Section 922(g)(1) is permanent." *Id.*

Mr. Barnard takes issue with the Government's "overriding argument," which he characterizes as being "that because there is a historical tradition of disarming dangerous people, it is constitutional to disarm all felons because felons are, categorically, all dangerous people." *Id.* at 9. Mr. Barnard distills this contention into four arguments: (i) that the "historical tradition of disarming . . . was not because those groups were actually dangerous, or actually a risk to commit gun violence"; (ii) that the term "dangerous" is vague and overbroad; (iii) that at trial, "if the

10

government is required to prove dangerousness, [this] would necessarily involve specific evidence of other 'bad acts,' which ordinarily would not be admissible under F.R.E. 404(b)"; and (iv) that the Government "has not explained how the 'how' and 'why' of historical firearms regulation compares with the 'how' and 'why' of 922(g)(1)" as Mr. Barnard argues *Bruen* requires. *Id.* at 9-12.

Mr. Barnard concludes by submitting, and outlining the merits, of potential likely paths forward for the Supreme Court in determining the constitutionality of § 922(g)(1). *Id.* at 13.

## III.   LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1).  One such motion, relevant here, is a motion to dismiss.  "An indictment, or a portion thereof, may be dismissed if it is otherwise defective or subject to a defense that may be decided solely on issues of law." *United States v. Pringle*, No. 22-10157-FDS, 2023 U.S. Dist. LEXIS 193924, at *2 (D. Mass. Oct. 30, 2023).  For example, "[a] defendant may seek the dismissal of an indictment on the grounds that the statute authorizing the charges is unconstitutional."  *United States v. Fulcar*, No. 23-cr-10053-DJC, 2023 U.S. Dist. LEXIS 192908, at *1 (D. Mass. Oct. 27, 2023) (citing *United States v. Carter*, 752 F.3d 8, 12 (1st Cir. 2014)).

Such a challenge to the constitutionality of a statute may be facial or as-applied.  To succeed on a facial attack, the moving party must demonstrate "that the

statute lacks any 'plainly legitimate sweep.'" *Hightower v. City of Bos.*, 693 F.3d 61, 77-78 (1st Cir. 2012) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)).  To succeed on an as-applied challenge, the defendant must show that the statute is unconstitutional as applied to the circumstances of his case. *See id.* at 71-72.

Either way, "dismissing an indictment is an extraordinary step," *United States v. Li,* 206 F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes,* 124 F.3d 39, 44 (1st Cir. 1997)), because, by returning an indictment, a grand jury is carrying out a constitutionally sanctioned function.  *See* U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . .").  "When a federal court uses its supervisory power to dismiss an indictment, it directly encroaches upon the fundamental role of the grand jury.  That power is appropriately reserved, therefore, for extremely limited circumstances." *Whitehouse v. United States Dist. Ct.,* 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States,* 487 U.S. 250, 263 (1988)).

## IV.   DISCUSSION

Mr. Barnard moves the Court to dismiss his indictment on the ground that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him because it violates his Second Amendment right to bear arms.  The underlying basis of his challenge is that permanent disarmament of felons is constitutionally impermissible, at least in his case, because it limits his right to bear arms to protect himself outside his home despite his disability.  In the Court's view, Mr. Barnard's argument is unavailing.

Mr. Barnard is correct that *Heller* "rejected the long-standing principle" that "rights granted by the Second Amendment [were] in relation to a 'militia.'" *Pl.'s Mot.* at 2 . Mr. Barnard is also correct that "the Supreme Court has further expanded the rights guaranteed under the Second Amendment, holding that . . . 'the Second and Fourteenth Amendments [also] protect an individual's right to carry a handgun for self-defense outside the home.'" *Id.* at 3 (quoting *Bruen*, 142 S. Ct. at 2122).

However, after *Heller*, the First Circuit affirmed the conviction of a defendant under 18 U.S.C. § 922(g)(1) in *United States v. Torres-Rosario*, 658 F.3d 110 (1st Cir. 2011). In *Torres-Rosario*, the movant, much like Mr. Barnard, argued that § 922(g)(1) was unconstitutional as applied to him. 658 F.3d at 112. The First Circuit, in denying the challenge, explained that the "Supreme Court said its opinions in *Heller* and *McDonald* 'did not cast doubt on such longstanding regulatory measures as prohibition on the possession of firearms by felons.'" *Id.* at 112-13 (quoting *McDonald*, 130 S. Ct. at 2407). The First Circuit added that it was not alone; in fact, "[a]ll of the circuits to face the issue post *Heller* [had] rejected blanket challenges to felon in possession laws." *Id.* at 113. In line with this consensus, the First Circuit rejected the movant's challenge despite his claim that he had no prior convictions for a violent felony. *Torres-Rosario*, 658 F.3d at 113. Mr. Barnard's indictment pursuant to § 922(g)(1) easily fits within this First Circuit precedent—which binds the Court—and the Court concludes that § 922(g)(1) is constitutional.

Moreover, Mr. Barnard's case is distinguishable from the movant in *Torres-Rosario* but that difference does not aid Mr. Barnard. To the contrary. In *Torres-*

13

*Rosario*, the movant had "no prior convictions for any violent felony." *Id.* The First Circuit nonetheless found that even "[a]ssuming *arguendo* that the Supreme Court might find some felonies so tame and technical as to be insufficient to justify the ban, drug dealing[, the movant's offense,] is not likely to be among them." *Id.* Here, Mr. Barnard's first conviction was violent, and the underlying conduct of his second conviction was also violent. *See United States v. Jeffrey Paul Barnard*, No. 1:14-cr-00088-JAW, 2016 WL 1298100 (D. Me. April 1, 2016), *Pretrial Services Report* (ECF No. 91) at 4-10 (listing Mr. Barnard's criminal history, including convictions for trespassing on a residence to execute threat or serious bodily injury, assault on a police officer, two assaults, and multiple counts of terrorizing). It stands to reason that the First Circuit would readily find that Mr. Barnard's actions render his indictment constitutional, even if the Supreme Court were to limit bans on felons possessing a weapon.

Although Mr. Barnard concedes that in *Heller*, the Supreme Court wrote that "nothing" in the "opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," *see Pl.'s Mot.* at 4 (quoting *Heller*, 554 U.S. at 626-27), he characterizes this language as "dicta" and therefore merely "an unconstitutional advisory opinion." *See id.* (quoting *Bullock*, 2023 U.S. Dist. LEXIS 112397, at *34-44). Accordingly, Mr. Barnard submits, "district courts must apply the framework required by the controlling precedent established in *Bruen* without deference to potentially contradictory advisory opinions constituting nothing more than dicta." *Id.* at 5.

14

Mr. Barnard's position is untenable under First Circuit law. "Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." *Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004), *abrogated on other grounds by Carson v. Makin*, 142 S. Ct. 1987 (2022). Mr. Barnard points to no First Circuit case that revokes the binding precedent in *Torres-Rosario* and the Court is aware of none.

Absent the First Circuit overruling *Torres-Rosario*, the Court must follow it "unless it has unmistakably been cast into disrepute by supervening authority." *Id.* Mr. Barnard argues that *Bruen* does just that because it "modified the previous legal standard governing Second Amendment cases, creating a new two-step analysis." *Pl.'s Mot.* at 4. (citing *Bruen*, 142 S. Ct. at 2129-30). While Mr. Barnard is correct that *Bruen* creates a new two-step analysis, he fails to show how this revised approach to Second Amendment claims undermines *Torres-Rosario*. *See United States v. Fulcar*, No. 23-CR-10053-DJC, 2023 U.S. Dist. LEXIS 192908, at *7 (D. Mass. Oct. 27, 2023) ("*Bruen* did not reverse binding First Circuit precedent affirming the constitutionality of § 922(g)(1)"); *see also id.* at *7-9 (outlining four indications that the First Circuit's decision in *Torres-Rosario* has not been overruled by *Bruen*).

*Torres-Rosario* is premised on the idea that the "Supreme Court said its opinions in *Heller* and *McDonald* 'did not cast doubt on such longstanding regulatory measures as prohibition on the possession of firearms by felons.'" *See Torres-Rosario*, 658 F.3d at 112-13 (quoting *McDonald*, 130 S. Ct. at 2407). Even if *Bruen* does not

15

explicitly speak on the status of laws that prohibit felons from possessing firearms, as the Government points out, "*Bruen* defines the Second Amendment as belonging to 'law-abiding' citizens no fewer than fourteen times." *Gov't's Opp'n* at 7 (quoting *Heller*, 554 U.S. at 635; and citing *Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133-34, 2135 n. 8, 2138 n.9, 2150, 2156). Further, "at least six of the Justices . . . read the [*Bruen*] majority opinion as maintaining the status quo as to the constitutionality of felon in possession laws like § 922(g)(1)." *Fulcar*, 2023 U.S. Dist. LEXIS 192908, at *7; *see also* <u>*Bruen*</u>, 142 S. Ct. at 2157 (Alito, J., concurring) (explaining that "[n]or have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns"); *id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating *Heller* and *McDonald*'s assurances that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); *id.* at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) (agreeing with Justice Kavanaugh that the majority opinion did not cast doubt on *Heller*'s holding as to the presumptive lawfulness of felon in possession laws).

Therefore, the Supreme Court has not held that regulatory measures prohibiting firearm possession by felons are unconstitutional. Consequently, *Torres-Rosario* has not "unmistakably been cast into disrepute by supervening authority." *Eulitt*, 386 F.3d at 349. For that reason, courts in this circuit have repeatedly rejected *Bruen* challenges to § 922(g)(1). *See United States v. Pringle*, No. CR 22-10157-FDS, 2023 WL 7135176, at *3 (D. Mass. Oct. 30, 2023); *United States v. Fulcar*, No. 23-CR-

10053-DJC, 2023 U.S. Dist. LEXIS 192908, at *9-10 (D. Mass. Oct. 27, 2023); *United States v. Trinidad*, No. 21-CR-398, 2022 WL 10067519, at *3 (D.P.R. Oct. 17, 2022); *United States v. Giambro*, No. 2:22-cr-00044-GZS, 2023 U.S. Dist. LEXIS 93369, at *2 (D. Me. May 30, 2023); *United States v. Belin*, No. 21-cr-10040-RWZ, 2023 WL 2354900, at *1 (D. Mass. Mar. 2, 2023); *United States v. Therrien*, 21-cr-10323-DPW, Dkt. Nos. 88, 94 (D. Mass. March 6, 2023); *United States v. Davis*, No. 1:23-cr-10018-DJC, Dkt. No. 49, 2023 WL 1970085 (D. Mass. March 17, 2023). The Court joins its sister courts in doing so today.

Absent either the First Circuit revoking *Torres-Rosario* or it being unmistakably cast into disrepute by supervening Supreme Court authority, the Court remains bound by First Circuit precedent. As such, "controlling First Circuit precedent forecloses [Mr. Barnard's] as-applied challenge because his criminal history includes convictions for offenses that cannot be described as 'tame' or 'technical.'" *Fulcar*, 2023 U.S. Dist. LEXIS 192908, at *15 (quoting *Torres-Rosario*, 658 F.3d at 113).

## V.    CONCLUSION

The Court DENIES Jeffrey Paul Barnard's Motion to Dismiss (ECF No. 48).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of November, 2023

17