UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-00035-JAW |
| | ) | |
| JEFFREY PAUL BARNARD, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED ORDER ON MOTION FOR COUNSEL[1]**

Having been appointed five defense counsel in this felon in possession case, each of whom has withdrawn due to conflicts with the defendant, a pro se defendant moves the court to appoint a sixth defense lawyer to represent him and demands a list of panel defense counsel so that he may interview them and make his choice for the court to appoint. The Court grants the defendant's motion for appointed counsel but rejects his demand for the panel list and interviews because an indigent defendant does not have the right to choose his defense lawyer.

## I.   BACKGROUND

On April 3, 2024, Jeffrey-Paul Barnard, acting pro se, filed a motion for appointment of counsel in this case. *Mot. for Continuance of Trial and Appointment of Counsel* (ECF No. 109) (*Mot. for Counsel*).[2] The Government responded on April 23, 2024. *Resp.* at 1-2 (ECF No. 120) (*Gov't's Opp'n*).

---

[1]       In its original order, the Court failed to account for the Government's response to this portion of Mr. Barnard's motion. *See Resp.* (ECF No. 120).

[2]       Mr. Barnard moved for various forms of relief in his April 3, 2024 motion. *Mot. for Counsel* at 1-4. First, Mr. Barnard moved to continue the jury trial then scheduled for June 2024 and all pre-trial motion dates reset. *Id.* at 1. Next, Mr. Barnard requested new counsel. *Id.* at 2-4. Third, Mr. Barnard requested that this Judge recuse himself. *Id.* at 2-3. On April 16, 2024, the Court denied Mr. Barnard's motion for recusal. *Order Denying Def.'s Mot. to Recuse* (ECF No. 117). On April 24, 2024, the Court granted Mr. Barnard's motion to continue trial, and, with that continuance, all pretrial deadlines will

## II.  JEFFREY-PAUL BARNARD'S MOTION FOR APPOINTMENT OF COUNSEL

In his motion, Mr. Barnard says that he wants new counsel "due to the recent developments as to his medical care and mandatory surgery that is pending." *Id.* at 2.  Mr. Barnard expresses "no confidence in his present **Stand-By** counsel as to his defense going forward from here and the complex nature of his case due to all his medical issues." *Id.* (bold in original).  Mr. Barnard also says that Attorney Vincent had "no experience in dealing with any cases in his 30+ years of experience that pertain to issues of venue and the changing of a defendant's trial from the division he was indicted in." *Id.*  Mr. Barnard complains that Attorney Vincent "has all but said to this defendant that going to trial in this case is just a waste of time and a slow death, that in going to trial and exercising his Constitutional right will only result in a harsher sentence at best." *Id.*

Mr. Barnard is not only requesting that the Court appoint new counsel, but also that the Court order the Clerk's Office to send him a list of all Criminal Justice Act (CJA) counsel accepting criminal defense appointments within the District of Maine "to allow this defendant the opportunity to speak with any future appointment of counsel that he might be able to work with." *Id.*  Mr. Barnard asks that the Clerk send him the list of counsel so that he can "pick his new counsel, without interference of this court and appointed by this court once attorney is chosen by defendant." *Id.* at 3.  Mr. Barnard demands that the Court "**order** appointment of counsel once the

---

be reset.  *Speedy Trial Order* (ECF No. 122).  This leaves only his motion for counsel pending from his April 3, 2024 motion.

clerk has sent CJA list of potential attorney[]s to [him], so that this defendant will be able to work with, without the court's influence in this process of appointment of counsel and that if the court would allow and **order** this respectful request, then this defendant will have no choice but to work with his selection of counsel and inform the court within 30-days of his choice of counsel for the court to make appointment of his attorney on the record." *Id.* (bold in original). Mr. Barnard promises that if the Court issues this order, he "will keep this appointment until the end of this case, because this will be his choice." *Id.* Finally, Mr. Barnard notes that his family and friends "are still trying to find legal representation for both his criminal and numerous civil cases to be handled in his best interest." *Id.* at 3-4.

To his motion, Mr. Barnard attached a letter dated March 31, 2024 to Attorney Vincent. *Id.* Attach. 2, *Letter from Jeffrey-Paul Barnard to Att'y Joel Vincent* (Mar. 31, 2024). The first part of the letter is Mr. Barnard's apology to Attorney Vincent for his being "a little upset and uptight the first and second time we met here at the jail." *Id.* at 1. In the second paragraph, Mr. Barnard chastises Attorney Vincent for coming to jail to meet him without prior notice. *Id.* Mr. Barnard tells Attorney Vincent that it is "very rude to just show up unannounced." *Id.* Finally, Mr. Barnard informs Attorney Vincent that it is "best if we part ways," because Mr. Barnard does not think Attorney Vincent has "my best interest at hand and to be honest all you want is the easy way out to put my case behind you." *Id.* Mr. Barnard also opines that his case is "way beyond your ability to defend me properly." *Id.* He ends by

informing Attorney Vincent that he would be calling him to ask that he "recuse yourself." *Id.*

On April 15, 2024, Attorney Vincent filed a motion to withdraw as Mr. Barnard's standby counsel. *Standby Counsel's Mot. to Withdraw* (ECF No. 114). The Court granted Attorney Vincent's motion on April 16, 2024. *Order* (ECF No. 115). At present, Mr. Barnard is representing himself without standby counsel.

## III.   THE GOVERNMENT'S OPPOSITION

The Government objected "to yet another appointment of counsel." *Gov't's Opp'n* at 1. Despite preferring for a "variety of reasons" that Mr. Barnard be represented in the matter, the Government believes "it simply appears that the defendant cannot maintain a long-term working relationship with defense counsel." *Id.* The Government adds that "[f]ive skilled and experienced defense counsel have been required to withdraw in this case. There is no reason to believe that a 6th attorney will have any better luck." *Id.* The Government also points out that Mr. Barnard "has been informed previously that the court would be appointed no other attorneys to his case." *Id.*

The Government describes "Mr. Barnard's suggestions that he be allowed to engage in some type of interview process of various on the CJA panel" as "not acceptable." *Id.* at 1-2. The Government concludes by pointing out that "the defendant is entitled to defense counsel but not the counsel of his choice unless, of course, that counsel is retained by the defendant himself." *Id.* at 2.

## IV.   FURTHER BACKGROUND

### A.   The 2001 Criminal Case

In his motion, Mr. Barnard alludes to his "long standing history" with this Judge.  *Mot. for Counsel* at 2.  He is correct.  Mr. Barnard was indicted on a federal criminal case, a charge of being a felon in possession of a firearm, on July 17, 2001, before this Judge was appointed.  *See United States v. Jeffrey Paul Barnard*, 1:01-cr-00041-JAW.  Mr. Barnard was represented throughout by Attorney Marvin Glazier.  *Id.*  This Judge presided over Mr. Barnard's two-day jury trial, which lasted from November 12, 2003 to November 13, 2003, when the jury returned a verdict of guilty.  *Id.*, *Jury Verdict* (ECF No. 67).  On July 7, 2004, the Court sentenced Mr. Barnard to 103 months of incarceration, three years of supervised release, and a special assessment of $100.  *Id.*, *J.* (ECF No. 107).  Mr. Barnard appealed his conviction to the Court of Appeals for the First Circuit, and on June 14, 2005, the First Circuit affirmed his conviction.  *United States v. Barnard*, 133 Fed. App'x 754 (1st Cir. 2005).

Unfortunately, Mr. Barnard struggled to conform to the conditions of supervised release and multiple petitions for revocation and terms of incarceration followed.  *See id.* (ECF Nos. 119-246).  Finally, on May 17, 2011, this Court imposed a six-month term of incarceration for a supervised release violation and ordered no further supervised release to follow.  *Id.*, *Revocation J.* (ECF No. 242).

### B.   The 2014 Criminal Case

Then on June 19, 2014, the United States Attorney's Office filed a new criminal complaint against Mr. Barnard, alleging that he was a felon and possessed a firearm.

5

*See United States v. Jeffrey Paul Barnard*, 1:14-cr-00088-JAW, *Compl.* (ECF No. 1). On July 17, 2014, a federal grand jury indicted Mr. Barnard for the same offense. *Id.*, *Indictment* (ECF No. 109).

On June 7, 2016, Mr. Barnard pleaded guilty to this charge, *id.*, *Min. Entry* (ECF No. 234), and on January 4, 2017, the Court sentenced Mr. Barnard to seventy-eight months of incarceration, three years of supervised release, and a $100 special assessment. *Id.*, *J.* (ECF No. 279). Mr. Barnard appealed his sentence to the First Circuit, and on January 5, 2018, the First Circuit affirmed the conviction and sentence. *Id.*, *J. of Ct. of Appeals for the First Circuit* (ECF No. 287). The First Circuit noted in its judgment that defense counsel had sought to withdraw and submitted a brief under *Anders v. California*, 386 U.S. 738 (1967).

It was during this case that Mr. Barnard began to have trouble with his defense lawyers. During the resolution of the original charge, the Court appointed four defense counsel: Jeffrey Silverstein, Bruce Merrill, James Nixon, and Wayne Foote. At the time, Attorney Nixon was an Assistant Federal Defender,[3] and the other attorneys were experienced, highly respected counsel on this District's CJA panel.

Once again, upon release from incarceration, Mr. Barnard had difficulty complying with the conditions of supervised release, and periodic petitions for revocation were filed against him. *Id.* (ECF Nos. 290-330). Finally, on July 17, 2020, the Court ordered a time served sentence and no supervised release to follow. *Id.*, *Revocation J.* (ECF No. 330).

---

[3]   Mr. Nixon has recently been appointed the Federal Defender for the District of Maine.

On May 18, 2023, a federal grand jury indicted Mr. Barnard for being a felon in possession of a firearm for a third time. *Indictment* (ECF No. 3). Since the indictment, the Court has appointed four defense lawyers to represent Mr. Barnard and one standby counsel. Each attorney has moved the Court to withdraw as Mr. Barnard's counsel due to a breakdown in communication with Mr. Barnard, sometimes within weeks or even one day of appointment, and in one case, the defense lawyer filed repetitive motions. *Mot. for Leave to Withdraw as Counsel* at 1 (ECF No. 24) ("[D]efendant does not agree to follow counsel's advice" and "Defendant has repeatedly instructed that counsel withdraw from representation"); *Mot. to Withdraw* at 1 (ECF No. 28) ("Defendant has insisted that counsel withdraw . . . Counsel believes communication between counsel and the Defendant has broken down"); *Mot. to Withdraw as Counsel* at 1 (ECF No. 34) (Counsel "moves to withdraw as counsel for the Defendant at the direction of the Defendant"); *Mot. to Withdraw* at 1 (ECF No. 50) ("Defendant wants Counsel to withdraw"): *Mot. to Withdraw* at 1 (ECF No. 75) ("Defendant wants Counsel to withdraw"); *Mot. to Withdraw* at 1 (ECF No. 81) ("Defendant wants Counsel to withdraw"); *Standby Counsel's Mot. to Withdraw* at 1 (ECF No. 114) ("Mr. Barnard has requested that the court appoint counsel other than instant counsel").

## V.   THE LAW

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to counsel:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein

7

the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. CONST. amend. VI.

The Court of Appeals for the First Circuit has described the right to counsel as "a right of the highest order." *United States v. Mejía-Encarnación*, 887 F.3d 41 (1st Cir. 2018) (quoting *United States v. Jones*, 778 F.3d 375, 388 (1st Cir. 2015)). An "essential component of that right is the accused's opportunity to obtain counsel of his own choice." *United States v. Díaz-Rodríguez*, 745 F.3d 586, 590 (1st Cir. 2014) (citing *Powell v. Alabama*, 287 U.S. 45 (1932)).

But, as the First Circuit has clarified, the defendant's right to a lawyer of his own choosing is limited to situations where the defendant is paying for the lawyer. *United States v. Van Anh*, 523 F.3d 43, 48 n.3 (1st Cir. 2008); *see United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). "Although indigent defendants have the right to appointed counsel, they have neither the right to be represented by counsel of their choosing, nor the right to demand different counsel except for good cause." *Van Anh*, 523 F.3d at 48 n.3.

Thus, "a defendant's right to his choice of counsel is not absolute; there are limits to the time and manner of its exercise." *Id.* (citing *United States v. Richardson*, 894 F.2d 492, 496 (1st Cir. 1990)). "[I]t is well recognized that a criminal defendant's absolute right to counsel does not confer an absolute right to a *particular* counsel." *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir. 1977) (emphasis in original). "A

8

defendant cannot exercise this right in a manner that will 'unduly hinder the fair, efficient, and orderly administration of justice.'" *Id.* (quoting *United States v. Panzardi Alvarez*, 816 F.2d 813, 815 (1st Cir. 1987)).

## VI.   DISCUSSION

As this Court's appointment of five defense counsel for Mr. Barnard in this case alone confirms, this Court is most anxious that Mr. Barnard be represented by counsel.  In fact, on February 8, 2024, when Mr. Barnard came before the Court for a hearing on Attorney Rodway's motion to withdraw as counsel, which was based on Mr. Barnard's directive, the Court advised Mr. Barnard that his decision to terminate Attorney Rodway was "gravely ill advised" and his decision to represent himself was "a very, very bad mistake." *Tr. of Proceedings* 3:5-6 (ECF No. 118) (*Mot. Tr.*).  The Court extensively reviewed with Mr. Barnard the hazards of self-representation, especially in view of the seriousness of the charge and its potential penalties. *Id.* 4:2-21:5.  The Court beseeched Mr. Barnard to reconsider his relationship with Attorney Rodway, the fourth attorney the Court appointed, and to allow Attorney Rodway to represent him. *Id.*  When Mr. Barnard insisted that Attorney Rodway be removed and the Court reluctantly acquiesced, the Court appointed Attorney Vincent as standby counsel, but soon, Mr. Barnard was unable to work with Attorney Vincent, even as standby counsel, and demanded that Attorney Vincent withdraw.  Once again, the Court acquiesced, granting Attorney Vincent's motion to withdraw as standby counsel, *Order* (ECF No. 115), leaving Mr. Barnard to represent himself.  Mr.

Barnard's current insistence on his right to counsel is therefore in the context of his repetitive insistence that defense counsel withdraw from representation.

The source of Mr. Barnard's dissatisfaction with serial defense counsel is unclear.  Mr. Barnard informed the Court on February 8, 2024 that "[w]e don't have no honest lawyers in our . . . lawyer pool no more," *id.* 24:13-14, and he directly accused Attorney Rodway, a highly respected defense lawyer, of lying to him.  *Id.* 26:20-27:2.  It may be that Mr. Barnard does not like lawyers who give him advice he does not like.  *See Mot. for Counsel* at 2 (describing Attorney Vincent's legal advice).  It also may be that Mr. Barnard directs the lawyer on how he wants the case defended, and, if the lawyer disagrees, Mr. Barnard views the lawyer as incompetent or mendacious.  Whatever the reason, given the Court's history with Mr. Barnard, which goes back to 2004, the Court told Mr. Barnard on February 8, 2024 that it worried that if another lawyer were appointed to represent him, he would "be here in another two or three weeks saying you don't like that lawyer."  *Mot. Tr.* 26:2-4.  Unfortunately, as forecasted, here we are again.

It seems that Mr. Barnard is under the misimpression that the Court must appoint counsel of Mr. Barnard's own choosing.  *Mot. for Counsel* at 3 (asking that the "CJA appointment list be sent to defendant as to pick his new counsel, without influence by the court and appointed by the court once attorney is chosen by defendant").  As the Court has laid out earlier, this is simply not the law.

Mr. Barnard has the right to choose his own lawyer, if he pays for the lawyer.  But otherwise, the Court retains the right to select the lawyer to represent him.  The

Court will not accede to Mr. Barnard's demand that he be given a list of all CJA counsel in the District of Maine so that he can interview them, choose his desired lawyer, and require the Court to appoint his choice. Once again, the Sixth Amendment to the United States Constitution does not require so much, as has been repeatedly noted by the Court of Appeals for the First Circuit.

The Court warns Mr. Barnard that its patience is not inexhaustible. The defense lawyer merry-go-round must stop. In this case and in past cases, the Court has granted Mr. Barnard's plea for counsel only to discover that Mr. Barnard has picked a fight with his attorney, leading to a motion to withdraw, and the appointment of a new lawyer, starting the whole process over again. The Court will not allow Mr. Barnard to undermine "the prompt, fair and ethical administration of justice." *Díaz-Rodríguez*, 745 F.3d at 590 (quoting *United States v. Woodard*, 291 F.3d 95, 106 (1st Cir. 2022)). The Court reiterates that the law allows appointment of different counsel only for "good cause." *Van Anh*, 523 F.3d at 48 n.3; *see also United States v. Amede*, 977 F.3d 1086, 1106-07 (11th Cir. 2020) (explaining that a defendant's refusal to cooperate with counsel, appointed counsel's refusal to adopt frivolous or harmful legal positions, and a defendant's general loss of confidence or trust in his appointed counsel, standing alone, do not provide good cause for appointment of new counsel).

Moreover, the closer to trial, the less likely it is the Court will grant a motion to withdraw, and Mr. Barnard will have to go to trial with his appointed lawyer, or, if the Court grants the motion to withdraw, the less likely the Court will allow new

defense counsel, and Mr. Barnard could end up representing himself, something the Court has implored Mr. Barnard not to do. *Díaz-Rodríguez*, 745 F.3d at 590; *Woodard*, 291 F.3d at 106. The Court again urges Mr. Barnard in the strongest terms to cooperate with his newly appointed lawyer and work together in the defense of this prosecution.

## VII.   CONCLUSION

The Court GRANTS in part and DENIES in part Jeffrey-Paul Barnard's Motion for Continuance of Trial and Appointment of Counsel (ECF No. 109). The Court grants the motion insofar as the Defendant requests appointment of new counsel, and the Court will assign new defense counsel to represent him. The Court DENIES Jeffrey-Paul Barnard's motion insofar as he demands the right to a list of all CJA counsel in the District of Maine so that he can interview the lawyers on the panel and choose his own attorney from the list and direct the Court to appoint his choice.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of April, 2024