UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:23-cr-00035-JAW |
| | ) | |
| JEFFREY PAUL BARNARD | ) | |

### ORDER ON MOTION TO COMPEL

An incarcerated individual moves for the court to compel the United States Marshal's Service (USMS) to provide him with a particular type of replacement prosthetic, pursuant to his Eighth Amendment right to adequate medical care while in prison. The USMS agrees that the plaintiff is entitled to a replacement prosthetic but disagrees that he is entitled to demand the specific level of prosthetic sought. Concluding that the plaintiff's motion amounts to a request for injunctive relief and that he has not demonstrated his likelihood of success on the merits, the court denies the motion without prejudice.[1]

---

[1] Mr. Barnard titles his submission as a motion to compel, not a motion for injunctive relief. *See Mot. to Compel* (ECF No. 149). However, he requests the Court order the USMS to prospectively provide him with a K3 level prosthetic for his left leg, below-the-knee amputation. *Id.* at 1. According to the caselaw of the First Circuit and the District of Maine, this request is for injunctive relief and the Court approaches the instant motion as such. *See, e.g., Rollins v. Magnusson*, Civil No. 03-82-B-W, 2003 U.S. Dist. LEXIS 22997, at *4 (D. Me. Dec. 19, 2003) (incarcerated individual diagnosed with diabetes sought injunctive relief pursuant to the Eighth Amendment for immediate medical attention to treat his acute eye condition); *Murphy v. Corizon*, 1:12-cv-00101-JAW, 2012 U.S. Dist. LEXIS 104142, at *11-12 (D. Me. July 6, 2012) (describing an incarcerated individual's motion for prospective medical relief pursuant to the Eighth Amendment as "the paradigmatic example of prospective injunctive relief"); *Kosilek v. Spencer*, 774 F.3d 63, 68 (1st Cir. 2014) (incarcerated individual seeking sex reassignment surgery pursuant to the Eighth Amendment brought motion for injunctive relief).

## I. BACKGROUND

On October 10, 2024, Jeffrey Paul Barnard, who is currently incarcerated in Strafford County Department of Corrections in Dover, New Hampshire, filed a motion requesting that the Court compel the United States Marshal's Service to provide him with a K3 level prosthetic replacement socket, along with the appropriate sleeves and liners. *Mot. to Compel*. On October 18, 2024, the Government opposed the motion. *Gov't's Resp. in Opp'n to Def.'s Mot. to Compel* (ECF No. 154) (*Gov't's Opp'n*). On October 23, 2024, Mr. Barnard replied. *Reply* (ECF No. 156).

## II. THE PARTIES' POSITIONS

### A. Mr. Barnard's Motion to Compel

Mr. Barnard begins by informing the Court that in 2012, he underwent an amputation of his left leg, below-the-knee, that requires a prosthetic limb for all daily activities. *Mot. to Compel* at 1. He seeks a K3 level prosthetic replacement socket, along with the appropriate sleeves and liners, from the USMS. *Id.* Mr. Barnard says that he has been incarcerated for sixteen months. *Id.*

Mr. Barnard supports his motion by citing the Eighth Amendment to the U.S. Constitution, which provides that no individual shall be subject to "cruel and unusual" punishment at the hands of the government. *Id.* (citing U.S. CONST. amend. VIII). He informs the Court that "the Eighth Amendment provides protection against more than just physically barbarous punishments," *id.* (citing *Gregg v. Georgia*, 482 U.S. 153, 171 (1976)), and that one such protection is the right to adequate medical care while incarcerated. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Mr.

2

Barnard avers that "while incarcerated, 'an inmate must rely on prison authorities to treat his medical needs,' and if they fail to do so, such a failure may 'produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the Eighth Amendment.'" *Id.* at 1-2 (quoting *Estelle*, 429 U.S. at 103). He asserts that "less serious cases of medical neglect can result in unnecessary pain and suffering, which is inconsistent with contemporary standards of decency." *Id.* at 2 (quoting Estelle, 429 U.S. at 103). Continuing to quote *Estelle*, Mr. Barnard says that "'[a] deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain,' regardless of whether the 'indifference is manifested by prison doctors in their response to a prisoner's needs or prison guards in intentionally denying or delaying access to medical care.'" *Id.* (quoting *Estelle*, 429 U.S. at 104).

Applying this standard to his own case, Mr. Barnard informs the Court that the weight gain he has experienced in prison from limited movement and activity "has caused [his] prosthetic to become ill-fitting" which "has caused severe pain, extreme pressure sores, and has resulted in the inability to use the prosthetic for days at a time." *Id.* He says that this "severely limits [his] mobility, which . . . further exacerbates the issues associated with his current prosthetic while being incarcerated." *Id.*

Mr. Barnard reports that he has been suffering from the limited use of his prosthetic and pressure sores for nearly ten months. *Id.* He also says that clinicians at Hanger's Prosthetic approved a K3 level prosthetic for him, which he claims "would

3

greatly alleviate the ongoing pain and suffering from the pressure sores, as well as increase his mobility." *Id.*

Mr. Barnard alleges that he previously applied to the USMS Medical Department for a K3 level prosthetic in accordance with recommendations from clinicians at Hanger's Prosthetic, but that USMS denied his request on April 2, 2024. *Id.* The USMS informed him that they could not authorize a K3 level prosthetic and were only authorized to approve basic level prosthesis fabrication or replacement at the K1 level, which they asserted is "sufficient for essential jail[-]related activities." *Id.* at 2-3. Mr. Barnard argues that "[t]his generalized conclusion does not apply to [him]," and insists this cannot be the only prosthetic option available for incarcerated individuals "when a K1 level prosthetic is causing pressure sores and extreme pain." *Id.* at 3.

The Defendant also submits that there are steps that USMS can take in the short term "to help alleviate some pain" and "provide some comfort" as he waits for a K3 level prosthetic. *Id.* First and foremost, he says, he needs an appointment with Hanger's Prosthetic "to reassess his current needs," including new nylons, orthopedic shoes, and an inner soft socket and outer carbon socket for his prosthetic. *Id.*

Mr. Barnard concludes that "the current level of care being provided by the USMS is well below any level of contemporary standards of decency" and urges the Court to require the USMS to provide him "with the medical care that is necessary to alleviate his ongoing pain and suffering." *Id.*

4

### B. The Government's Opposition

The Government urges the Court to deny Mr. Barnard's motion to compel. *Gov't's Opp'n* at 1. As an initial matter, the Government informs the Court that the USMS Director derives authority for the care and custody of prisoners from 28 C.F.R. § 0.111(j), (k), and 18 U.S.C. § 4086, and authority to manage standards for prisoner health care from 18 U.S.C. §§ 4006, 4013, 4241-4247, and S.142 – Hyde Amendment Codification Act. *Id.*

Next, the Government directs the Court to the USMS Policy Directive 9.4 (the Policy Directive), which it says "establishes policy and procedures for the provision and management of health care services to prisoners in the custody of the USMS." *Id.* (citing *id.*, Attach. 1, *USMS Policy Directive 9.4* (ECF No. 154-1) (*Policy Directive*)). Pursuant to the Policy Directive, "[a]ll prisoners will receive medically necessary healthcare services." *Id.* at 1 (citing Policy Directive at 1). The Policy Directive defines "medically necessary healthcare" as:

> [h]ealth care services provided by a hospital or licensed health care provider that the USMS determines meet the following criteria:
>
> a. Necessary to diagnose or treat a medical condition, which, if left untreated, would likely lead to significant loss of function, deterioration of health, uncontrolled suffering, or death;
>
> b. Consistent with established standards of medical practice in the United States;
>
> c. Not primarily for the personal comfort or convenience of the prisoner, family, or provider; and
>
> d. Approved by the United States Food and Drug Administration.

5

*Id.* at 1-2 (citing Policy Directive at 8). "Except for limited circumstances not relevant here," the Government avers, "prisoner medical care must be pre-approved by the [USMS]'s Service Prisoner Operations Division/Office of Medical Operations" (USMS POD/OMO). *Id.* at 2 (citing Policy Directive at 6).

The Government asserts that, in response to Mr. Barnard's motion for a K3 level prosthetic and an appointment with Hanger's Prosthetic to determine his current needs, "the government has had numerous telephone calls and email exchanges with the USMS Office of General Counsel and the POD/OMO." *Id.* Through these conversations, the Government has learned, first, that a prisoner's prosthetic needs are determined by using a ranking system called a "K-level." K-levels are a rating system, on a scale from zero to four, used by Medicare to indicate a person's rehabilitation potential. *Id.* (citing *id.*, Attach. 2, *Do You Know Your K-Level* (ECF No. 154-2) (*K-Level Info.*)). Typically, in a prison setting, the USMS will only approve prosthetics at the K1 level, described as "[t]he patient has the ability or potential to use a prosthesis for transfers or ambulation on level surfaces at a fixed cadence. This is typical of a household ambulator or a person who only walks about in their own home." *Id.* (citing K-Level Info. at 2). The USMS POD/OMO "will rarely approve a K2 level prosthetic," describing this level of prosthetic as "[t]he patient has the ability or potential for ambulation with the ability to traverse low-level environmental barriers such as curbs, stairs or uneven surfaces. Th[is] is typical of the limited community ambulator." *Id.* (citing K-Level Info. at 2).

6

Second, the Government admits that the USMS POD/OMO denied the Defendant's request for a K3 level prosthetic on June 10, 2024. *Id.* at 2-3 (citing *id.*, Attach. 3, *Med. Submission/Authorization # MED-24-169423/Denied* (ECF No. 154-3) (*Med. Submission/Authorization*)). In its denial, the USMS POD/OMO states:

> The USMS will only (possibly) authorize basic level prosthesis fabrication or replacement at the K1 level which is sufficient for ADL-related activities and ambulation in a jail setting. **In some instances, a K2 level prosthesis may be authorized if jail authorities indicate that the prisoner must traverse environmental boundaries such as curbs, stairs and uneven surfaces . . . [.] Please resubmit this request with additional supporting documentation, (a quote at the K2 level at Medicare rates), if the condition is considered of sufficient concern to warrant reconsideration during the prisoner's limited remaining time in USMS custody."**

*Id.* at 3 (citing Med. Submission/Authorization) (emphasis added by Government).

Third, the Government avers that "this supporting documentation has not been provided by the Stafford County Jail." *Id.* However, the Government informs the Court that, when USMS POD/OMO reached out to the Stafford County Jail Administrator on October 15, 2024, it learned that "the defendant has an appointment with the Hanger Clinic in the next couple of weeks (approval for this appointment was granted by the USMS on September 3, 2024)." *Id.* After this appointment, the Government says, the Stafford County Jail "plans on resubmitting information to the USMS POD/OMO seeking approval for a K-2 level prosthesis," and that, based on conversations with the USMS POD/OMO medical team, "it is very likely that the defendant will receive [such] approval." *Id.*

7

Based on the foregoing, the Government avers that "it appears that the USMS is addressing the issues related to the defendant's prosthesis" and Mr. Barnard's motion should thus be denied. *Id.* at 4.

### C. Mr. Barnard's Reply

In his reply, Mr. Barnard informs the Court that, after he filed his motion to compel, "he was taken to Hanger Clinic in Somersworth, New Hampshire, where he received a new inner sleeve." *Reply* at 1. Further, the prosthetists at Hanger Clinic "noted that Defendant's stump no longer fit into the socket and, as a result, measurements were taken for a new socket, liner, shoes, and nylons. These elements as identified by Hanger Clinic are crucial for a continued safe and healthy stump." *Id.*

## III. LEGAL STANDARD

The Court interprets Mr. Barnard's motion to compel, a legal recourse typically raised in the context of discovery disputes pursuant to Federal Rule of Civil Procedure 37(a), as a motion for injunctive relief. "A preliminary injunction is theoretically available in suits challenging prison conditions but Congress has cautioned courts against unwarranted meddling in prison operations." *Rollins*, 2003 U.S. Dist. LEXIS 22997, at *1-2 (quoting 18 U.S.C. § 3626(a)(2)). The *Rollins* Court said:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the

> preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

*Id.* (quoting 18 U.S.C. § 3626(a)(2); *see also Sosa v. Massachusetts Dep't of Corr.*, 80 F.4th 15, 25 (1st Cir. 2023) ("As a 'civil action with respect to prison conditions' for purposes of . . . 18 U.S.C. § 3626(g), [the plaintiff]'s pursuit of a preliminary injunction must also navigate the particular requirements for prospective relief established by that statute.").

To be entitled to preliminary injunctive relief, the plaintiff must satisfy four elements: "1) a likelihood of success on the merits, 2) a likelihood of irreparable harm [to the movant] absent interim relief, 3) a balance of equities in the plaintiff's favor, and 4) [that issuing the preliminary injunctive relief would be in] service of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements*, 794 F.3d 168, 171 (1st Cir. 2015). "The sine qua non of this four-part inquiry is likelihood of success on the merits." *New Comm Wireless Servs., Inc., v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

As the moving party, the plaintiff "bears the burden of establishing that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003)). "A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). While "trial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief,

9

*Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010), it is well established "that the Court is to bear constantly in mind that 'an injunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.'" *Saco Def. Sys. Div., Maremont Corp. v. Weinberger*, 606 F. Supp. 446, 450 (D. Me. 1985) (quoting *Plain Dealer Publ'g Co. v. Cleveland Type. Union #53*, 520 F.2d 1220, 1230 (6th Cir. 1975)).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones"; accordingly, "it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The failure of correctional officials to provide inmates with adequate medical care may offend the Eighth Amendment if their "acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011) (quoting *Estelle*, 429 U.S. at 106).

To succeed on an Eighth Amendment claim based on inadequate or delayed medical care, an inmate must demonstrate the care provided violates both an objective and subjective standard. *Id.* To satisfy the objective prong, the inmate must show that the medical need was "serious." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Estelle*, 429 U.S. at 103). The First Circuit has found a medical need

10

is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Leavitt*, 645 F.3d at 497 (quoting *Gaudreault v. Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

To satisfy the subjective prong, the inmate must also show that "prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety[.]" *Id.* (citing *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002)). Establishing "deliberate indifference" requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This standard encompasses a "narrow band of conduct." *Id.* (quoting *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 162 (1st Cir. 2006)). Merely subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim. *Id.* (citing *Feeney*, 464 F.3d at 162). Rather, the treatment must have been so inadequate as to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Id.* (quoting *Estelle*, 429 U.S. at 105-06). A deliberately indifferent mental state is shown when an official "culpably ignores or turns away from what is otherwise apparent," *id.* (citing *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 82 (1st Cir. 2005)), or when an official makes medical decisions recklessly with "actual knowledge of impending harm, easily preventable." *Id.* (quoting *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1st Cir. 2007)).

11

### 1. The Objective Inquiry

The Court easily concludes that Mr. Barnard's medical condition is "serious." After his left leg was amputated below the knee in 2012, he has required the use of a prosthetic limb for daily activities. *Mot. to Compel* at 1. Moreover, he claims that his "ill-fitting" prosthetic "has caused severe pain, extreme pressure sores, and has resulted in the inability to use the prosthetic for days at a time." *Id.* at 2. This "severely limits [his] mobility, which . . . further exacerbates the issues associated with his current prosthetic while being incarcerated." *Id.* The Government does not contest that Mr. Oliver's below-the-knee amputation is a serious medical condition; rather, they assert that they are sufficiently treating his serious condition in accordance with their statutory duties and policy directive. *See Gov't's Opp'n* at 1-4.

The Court finds that Mr. Barnard's need for a prosthesis to allow him to ambulate is a medical condition "that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Leavitt*, 645 F.3d at 497. The Court thus concludes that Mr. Barnard has shown he suffers from a "serious" medical condition and satisfies the objective prong. *See id.*

The Court turns to the subjective inquiry.

### 2. The Subjective Inquiry

The Court now considers whether Mr. Barnard has established that the USMS was deliberately indifferent to his serious medical condition and concludes that it was not. A prison official may be deliberately indifferent if the official "knows and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

The official must (1) be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and (2) actually draw the inference. *Id.*; *Leavitt*, 645 F.3d at 497 (deliberate indifference may exist when an official "ignores or turns away from what is otherwise apparent" or makes decisions about medical care recklessly with "actual knowledge of impending harm, easily preventable") (internal citations omitted).

Here, Mr. Barnard has not submitted to the Court any medical records, documented opinions of medical professionals, or other evidence that would allow it to conclude that the Government "knows and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. To the contrary, Mr. Barnard says that he is "working with clinicians at Hanger's Prosthetic," *Mot. to Compel* at 2, and that the Hanger Clinic just recently provided him with a new inner sleeve and took measurements for a new socket, liner, shoes, and nylons. *Reply* at 1.[2] The Government presumably provided transportation to these appointments. The Government also reports that it "has had numerous telephone calls and email exchanges with the USMS Office of General Counsel and the POD/OMO" in response to Mr. Barnard's request for a K3 level prosthetic. *Gov't's Opp'n* at 2. None of this suggests to the Court that the Government has been "deliberately indifferent" to Mr. Barnard's medical needs.

---

[2] Mr. Barnard does not reveal when he returned to Hanger's Prosthetic and has not provided a note from his visit. He only says that he went there after his motion was filed, which means that the Jail must have brought him to the clinic between October 10, 2024, when he filed his motion, and October 23, 2024, when he filed his reply.

13

Instead, the crux of Mr. Barnard's grievance is that the Government denied his request for a K3 level prosthetic and offered him a K1 or K2 level prosthetic instead. *Id.* at 2-3; *Gov't's Opp'n* at 3. The Court is not sure how this amounts to a claim of inadequate medical care in violation of the Eighth Amendment. Mr. Barnard tells the Court that clinicians at Hanger's Prosthetic "recommend[ed]" "a K3 level prosthetic" in his case, *Mot. to Compel* at 2, but he submits no medical records substantiating this claim and does not explain why he is more suited to a K3 level prosthetic. In contrast, the Government attaches to their opposition a copy of the BOP's denial of Mr. Barnard's request, *see* Med. Submission/Authorization, which explains that "[t]he jail states that the patient must traverse 1 curb and possible stairs for attorney visits." Med. Submission/Authorization at 1. Mr. Barnard provides the Court with no information that would allow it to conclude that a K2 level prosthetic, which is designed for "the ability to traverse low-level environmental barriers such as curbs, stairs or uneven surfaces," *see* Know Your K-Level at 2, and which the Government is confident Mr. Barnard will be granted, *see Gov't's Opp'n* at 3, is inapposite. For example, he does not describe at all what physical obstacles he encounters at the Strafford County Jail that could justify a K3 level prosthetic.

The First Circuit has cautioned that when an inmate objects to the Government's chosen course of treatment—as opposed to wholly denying medical care—courts should be reluctant to find a constitutional violation. *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of

14

treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors"); *Watson v. Canton*, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment"); *see also Belskis v. DT Devs., Inc.*, 2016 U.S. Dist. LEXIS 132258, at *34-35 (D. Me. Sept. 27, 2016) (the same).

Here, the Court finds it dispositive that the disagreement between Mr. Barnard and the USMS is over the kind of treatment he receives: a K1 or K2 level prosthetic as the Government proposes, or a K3 level prosthetic, as Mr. Barnard would prefer. The Court thus follows the precedent of this Circuit by declining to sit as a board of medical review and second-guess USMS's decision regarding the manner of Mr. Barnard's treatment. *See Sires*, 834 F.2d at 13. While the Court is sympathetic to Mr. Barnard's medical issues and his conviction that a K3 level prosthesis would alleviate his symptoms more than a K1 or K2 level prosthesis would, there is no probative evidence before the Court that would allow it to conclude that the Government has been deliberately indifferent to his medical needs.

Based on the foregoing, the Court concludes that Mr. Barnard has not shown a likelihood of success on the merits of his Eighth Amendment claim.

### B.  Likelihood of Irreparable Harm, Balance of Equities, and the Public Interest

"The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his

quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc.*, 287 F.3d at 9.

The Court acknowledges Mr. Barnard's concern for the quality of medical care he receives while he is incarcerated. However, the Court notes, first, that "[t]he party seeking [an injunction] bears the burden of establishing that these four factors weigh in its favor," *Esso Standard Oil Co.*, 445 F.3d at 18, and Mr. Barnard, although essentially seeking injunctive relief through his so-called motion to compel, did not assert any arguments regarding the likelihood of irreparable harm, the balance of equities, and the public interest. *See, generally, Mot. to Compel*. The Court notes, second, that Mr. Barnard has not demonstrated his likelihood of success on the merits; thus, the Court does not engage in "idle curiosity" by wading into the remaining factors. *Id.*

## V. CONCLUSION

Having found that Mr. Barnard has not demonstrated his likelihood of success on the merits of his Eighth Amendment claim, the Court DISMISSES without prejudice Mr. Barnard's Motion to Compel (ECF No. 149).

SO ORDERED.

                                           /s/ John A. Woodcock, Jr.
                                           JOHN A. WOODCOCK, JR.
                                           UNITED STATES DISTRICT JUDGE

Dated this 24th day of October, 2024